UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TYRONE INGRAM #203902** | **CIVIL ACTION** |
| **versus** | **NO. 07-1064** |
| **WARDEN** | **SECTION: "N" (1)** |

### REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2).[1] Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

---

[1] Pursuant to 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is now a statutorily mandated determination. According to Section 2254(e)(2), the district court generally may hold an evidentiary hearing only when the petitioner has shown that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered through the exercise of due diligence (28 U.S.C. § 2254(e)(2)(A)(ii)); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner (28 U.S.C. § 2254(e)(2)(B)).

Petitioner, Tyrone Ingram, is a state prisoner incarcerated at the River Bend Detention Center, Lake Providence, Louisiana. On February 5, 2004, he was convicted of Driving While Intoxicated (Fifth Offense) in violation of Louisiana law.[2] On March 19, 2004, he was sentenced to a term of thirty years imprisonment without benefit of probation, parole, or suspension of sentence.[3] On June 10, 2005, the Louisiana First Circuit Court of Appeal affirmed his conviction and sentence.[4] He then filed with the Louisiana Supreme Court a related writ application which was denied on March 10, 2006.[5] He filed a motion for reconsideration which was likewise denied on September 1, 2006.[6]

On December 27, 2006, petitioner filed this federal application for *habeas corpus* relief.[7] In support of his application, he claims that he was wrongly found to be a fifth offender because two of the predicate convictions on which the charge was based were unconstitutional.

The state concedes that petitioner's federal application is timely and that he exhausted his state court remedies.[8]

---

[2] State Rec., Vol. I of II, trial transcript, p. 118.

[3] State Rec., Vol. I of II, transcript of March 19, 2004; State Rec., Vol. I of II, minute entry dated March 19, 2004.

[4] State v. Ingram, No. 2004 KA 1602 (La. App. 1st Cir. June 10, 2005) (unpublished); State Rec., Vol. II of II.

[5] State v. Ingram, 925 So.2d 510 (La. 2006) (No. 2005-KO-2117); State Rec., Vol. II of II.

[6] State v. Ingram, 936 So.2d 192 (La. 2006) (No. 2005-KO-2117).

[7] Rec. Doc. 3. The application was filed in the United States District Court for the Middle District of Louisiana, and the matter was subsequently transferred to this Court.

[8] Rec. Doc. 6, pp. 3-4.

Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact. Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2). Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams[ v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also Hill, 210 F.3d at 485; 28 U.S.C. § 2254(e)(1).

### Facts

On direct appeal, the Louisiana First Circuit Court of Appeals summarized the facts of this case as follows:

> On August 3, 2003, Trooper Jody Blanchard was traveling eastbound on South Hollywood Road in Terrebonne Parish when he observed the vehicle driven by the defendant cross over the centerline into the westbound lane. Trooper Blanchard had the defendant pull over. Based on physical observations of the defendant, Trooper Blanchard conducted a field sobriety test. Following the defendant's poor performance, Trooper Blanchard administered an intoxilyzer test on the defendant that produced a reading of .257.[9]

### Petitioner's Claim

Petitioner claims that he was wrongly found to be a fifth offender in that two of the predicate convictions on which the charge was based were unconstitutional. On direct appeal, the Louisiana First Circuit Court of Appeal rejected that claim, holding:

> [T]he defendant avers that the trial court erred in denying the defendant's motion to quash predicate offenses. Specifically, the defendant contends that two of the DWI offenses listed in the bill of information should have been quashed because the defendant's uncounseled guilty pleas were not knowingly and voluntarily made.
> Boykin v. Alabama, 395 U.S. 238, 242, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969), requires that a trial court, before accepting a

---

[9] State v. Ingram, No. 2004 KA 1602, at p. 2 (La. App. 1st Cir. June 10, 2005) (unpublished); State Rec., Vol. II of II.

- 4 -

guilty plea, ascertain that the defendant has voluntarily and knowingly waived his right against self-incrimination, his right to a jury trial, and his right to confrontation. A guilty plea is a conviction and, therefore, should be afforded a great measure of finality. State v. Thornton, 521 So.2d 598, 600 (La. App. 1st Cir.), writ denied, 530 So.2d 85 (La. 1988). The defendant's waiver of his constitutional rights must be on the record, which must unequivocally show that the waiver was free and voluntary. See State v. White, 517 So.2d 461, 462 (La. App. 1st Cir. 1987), writ denied, 521 So.2d 1184 (La. 1988).

The first uncounseled guilty plea at issue involved a DWI first offense committed on February 27, 1994 (Docket Number 262681, Lafourche Parish, 17th J.D.C.). The Boykin hearing on this matter was March 28, 1994. In support of the predicate offense, the State introduced into evidence a copy of the minutes, the bill of information, and the transcript of the Boykin hearing. Upon pleading guilty to DWI, the trial judge conducted a thorough Boykin examination. He questioned the defendant about his age and occupation. He advised the defendant of all his rights and that a guilty plea meant a waiver of those rights. He asked the defendant several times if he understood what a guilty plea meant, and the defendant responded that he did. The trial judge explained to the defendant that a DWI is a graduated offense. He explained to the defendant the sentences and the minimum and maximum fines for a first, second, third, and fourth offense DWI. After informing the defendant of the maximum sentence for a fourth offense was thirty years, the trial judge stated, "So you see when you take this first step you take a first step towards something that can be rather severe. Essentially ... it would be a sentence of 30 years, and most of your adult life would be gone for that if you had to serve it all out."

After confirming several times that the defendant understood or had no questions concerning everything that was explained to him, the trial judge sentenced the defendant to six months in Lafourche Parish Jail. The trial judge suspended the sentence and ordered the defendant to pay a $500.00 fine, attend a DWI school, and perform community service work.

The defendant contends that, while the trial judge made him aware that a prior DWI conviction could be used to enhance a penalty in a subsequent DWI conviction, it was not clear to him that if he were sentenced under La. Code Crim. P. art. 894, the DWI provisions (La. R.S. 14:98) would still apply to him. Regarding the applicability of Article 894, the trial judge stated:

> Oh, yes, the 894. Let me explain that to you before you go. If you come back without getting in any trouble in six months I will take this off your record, but you have to get a lawyer, come back to court and do it and have it removed. Let me explain to you why. You will – unless you do this, with the DWI on your record, unless you have it removed, you will pay a tribute to the insurance companies in excess of what any lawyer would charge you for the rest of your lives. If you come back and take it off, it's a profit making situation for you.

The defendant asserts that the trial judge improperly indicated to the defendant that the Article 894 plea would not be used to enhance future penalties because it could be removed. As such, the defendant's plea was not knowing and intelligent.

We do not agree. While the trial judge was compelled to explain to the defendant, as part of the core Boykin requirements, his rights and the effect of waiving those rights, he was under no obligation to inform the defendant about penalty provisions or the possibility of enhancement. See State v. Strain, 585 So.2d 540, 543-544 (La. 1991); see also State v. Verdin, 2002-2671, pp. 5-6 (La. App. 1st Cir. 2/3/03), 845 So.2d 372, 376 (per curiam). Nevertheless, the trial judge explained to the defendant in detail the effects of, and the penalty provisions of, subsequent DWIs. The trial judge's explanation of how DWI is a graduated offense was clear and concise, and there is nothing in the record to indicate the defendant did not understand what he was being told. Moreover, the trial judge had already accepted the defendant's guilty plea and pronounced sentence when he began to explain Article 894 to the defendant. Thus, the defendant's guilty plea could not have been based on anything he was told regarding Article 894. After a thorough review of the record of this predicate plea, we are convinced the defendant, upon pleading guilty, voluntarily and knowingly waived his rights.

The other uncounseled guilty plea at issue involved a DWI second offense by the defendant committed on April 14, 1996 (Docket Number 274772, Terrebonne Parish, 32nd J.D.C.). In support of this predicate offense, the State introduced into evidence a copy of the minutes, the bill of information, a guilty plea form signed by the defendant, and the transcript of the Boykin hearing. At the hearing on this matter on October 25, 1996, the following colloquy between the trial judge and the defendant took place:

- 6 -

>BY THE COURT: Mr. Ingram, you have handed to me a <u>Waiver of Constitutional Rights and Plea of Guilty</u>.
>
>Q     First of all, do you still want to maintain your guilty plea?
>
>A     Yes.
>
>Q     Do you have any questions about the rights that you are giving up when you plea [sic] guilty to second offense Driving While Intoxicated?
>
>A     No.
>
>Q     What the law requires is that I review these with you, that we do that under oath. So that we would swear you in and then at any times you have any questions or if there's anything you don't understand stop me, ask me whatever questions you want. I'll explain whatever you want explained. Raise your right hand please.

The defendant was then sworn in, and the trial judge read to the defendant the waiver of rights and guilty plea form. The defendant was read all of his rights and the effect of waiver of those rights. He was informed, among other things, that a future DWI conviction could be the basis for enhancement of imprisonment and conversion of the subsequent charge into a felony. When the trial judge was finished reading, he asked the defendant, "Do you have any questions, Tyrone, about the rights that you give up, sir?" The defendant responded, "No." The trial judge then asked, "Do you still want to maintain your guilty plea?" The defendant responded, "Yes."

The defendant asserts the trial judge never asked him about his general competency or understanding of the proceedings, and that there is no affirmative showing in the record that when he pled guilty, he knowingly and voluntarily waived his rights to trial by jury, to confront his accusers, and against self-incrimination.

We do not agree. The trial judge reviewed in detail each and every constitutional right the defendant was waiving, including the

right to counsel and the inherent dangers of self-representation. The trial judge asked the defendant if he had any questions concerning these rights and twice offered him the opportunity to make any statements he wished. The defendant indicated that he had no questions and desired to maintain his guilty plea. While there was no inquiry on the record at the time of the plea as to defendant's age, education, experience, or background, the fact that he was thirty-three years old was in the record. Furthermore, the trial judge had an opportunity to observe the defendant's appearance, demeanor and responses in court at the time of his plea. See State v. Lodrigue, 97-1718, p. 7 (La. App. 1st Cir. 5/15/98), 712 So.2d 671, 674.

A review of this predicate conviction indicates that the defendant had a full understanding of the consequences of his plea. After a thorough review of the record, we are convinced the defendant, upon pleading guilty, voluntarily and knowingly waived his rights. The trial court properly denied the defendant's motion to quash these predicate offenses. This assignment is without merit.[10]

The Louisiana Supreme Court then denied petitioner's related writ application without assigning reasons.[11]

The two predicate offenses petitioner challenges, i.e. the first and second offense DWI convictions, were misdemeanors.[12] With respect to each of those convictions, he was sentenced to a term of six months imprisonment; however, those sentences were suspended. Petitioner now argues in this proceeding that those convictions cannot be used for enhancement purposes because he was unrepresented and did not knowingly and intelligently waive his right to counsel.

---

[10] State v. Ingram, No. 2004 KA 1602, at pp. 2-7 (footnote omitted); State Rec., Vol. II of II.

[11] State v. Ingram, 925 So.2d 510 (La. 2006) (No. 2005-KO-2117); State Rec., Vol. II of II.

[12] La.Rev.Stat.Ann. § 14:98(B)(1) and (C)(1); see also La.Rev.Stat.Ann. § 14:2(A)(4) and (6).

Under federal law, an indigent criminal defendant cannot be sentenced to a term of imprisonment, even a suspended term of imprisonment, unless the state afforded him the right to assistance of appointed counsel. Alabama v. Shelton, 535 U.S. 654 (2002); Scott v. Illinois, 440 U.S. 367 (1979). States are, of course, allowed to have even more stringent requirements, such as one guaranteeing the right to appointed counsel whenever imprisonment is *authorized* by statute, regardless of whether an actual sentence of imprisonment results. Nichols v. United States, 511 U.S. 738, 748 n.12 (1994). Louisiana has, in fact, opted for more expansive protections. As the Louisiana Supreme Court has noted:

> An accused in this state has the constitutional right to counsel as a matter of La. Const. art. I, § 13 in any case in which he or she is "charged with an offense punishable by imprisonment," without regard to whether imprisonment is actually imposed. State v. Stevison, 97-3122, p. 1 (La. 10/30/98), 721 So.2d 843, 844. In this respect, Louisiana law provides broader protection than the Sixth Amendment requires. Nichols v. United States, 511 U.S. 738, 747, 114 S.Ct. 1921, 1927, 128 L.Ed.2d 745 (1994) (prior uncounseled misdemeanor convictions which did not result in actual imprisonment may serve to enhance sentence upon conviction for a subsequent offense even though the enhanced sentence entails imprisonment) (overruling Baldasar v. Illinois, 446 U.S. 222, 100 S.Ct. 1585, 64 L.Ed.2d 169 (1980)); see also Scott v. Illinois, 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979) (Sixth Amendment right to counsel does not attach at trial of a misdemeanor offense which does not result in actual imprisonment).

State v. Deville, 879 So.2d 689, 690 (La. 2004).

Moreover, in Deville, the Louisiana Supreme Court noted that it had "long subscribed to the view that uncounseled misdemeanor D.W.I. convictions may not serve as the predicate for enhancement of a subsequent D.W.I. offense in the absence of a valid waiver of counsel." Id. In the instant case, however, the record reflects that petitioner was in fact informed of and validly

- 9 -

waived his right to representation by counsel with respect to both of the predicate convictions he now challenges.

As to the first conviction in case number 262681 in the Louisiana Seventeenth Judicial District Court, the colloquy reflects the following exchanges:

> Q. [by the court]:  You understand when you appear here without an attorney you give up your right to an attorney for this?
>
> A. [by petitioner]:  Yes, sir.[13]
>
> ....
>
> Q. [by the court]:  And you would have the right to have a lawyer at each and every stage of these proceedings.  If you could not have afforded one, the Court would have appointed one to you at no cost.  Do you understand that, gentlemen?  Mr. Ingram?
>
> BY MR. INGRAM:
> A.  Yes, sir.
> ....
>
> Q. And do you understand when you appear here without a lawyer you waive or give up your right to an attorney.  Do you understand that, Mr. Ingram?
>
> BY MR. INGRAM:
> A.  Yes, sir.[14]

As to the second conviction in case number 274772 in the Louisiana Thirty-Second Judicial District Court, petitioner signed a "Waiver of Constitutional Rights and Plea of Guilt" form which included the following declaration:

---

[13] State Rec., Vol. I of II, transcript of March 18, 1994, pp. 1-2.

[14] State Rec., Vol. I of II, transcript of March 18, 1994, p. 7.

> I understand that in pleading guilty to such charge I stand convicted thereof and waive the following constitutional rights:
>> ....
>> 7.  To be represented at all times in the proceeding, including appeal, by counsel of my choice or by a court appointed attorney at no cost to me if I lack the finances to employ one.
>> ....
>
> I do not want an attorney. I am able to read, write and speak the English language. I fully understand the nature of the charges against me, and I choose self-representation. I understand that an attorney, because of his special training and education, is in a better position to raise technical defenses to any charges which are pending and to which I desire to represent myself. I represent myself knowing this and desire to plead as set forth above. I believe this plea is in my best interest and I recognize the danger of self-representation.[15]

Additionally, the trial judge even read these declarations to petitioner during the colloquy, and he indicated that he had no questions concerning the rights he was waiving.[16]

Under state law, it is clear that the record was more than sufficient to establish a valid waiver of the right to counsel. In State v. Deville, 879 So.2d 689 (La. 2004), the Louisiana Supreme Court addressed the situation in which the defendant had been convicted a third offense DWI. The defendant argued that the record failed to reflect that there was a valid waiver of counsel with respect to one of his predicate convictions, despite the fact that the record included a form defendant had signed at the time of the plea acknowledging that he had been advised of his right to counsel and that he waived that right. In rejecting defendant's argument, the Louisiana Supreme Court held:

> In State v. Carlos, 98-1366 (La. 7/7/99), 738 So.2d 556, we held that for recidivist D.W.I. prosecutions the state may satisfy an initial

---

[15] State Rec., Vol. I of II.

[16] State Rec., Vol. I of II, transcript of October 25, 1996, pp. 4-5.

burden of production and persuasion by proving the fact of a prior D.W.I. conviction by way of a guilty plea and the defendant's representation by counsel at the time he or she entered the plea without regard to whether the plea was entered in this state or elsewhere. The burden then shifts to the defendant to produce evidence of a significant procedural irregularity in the plea. In the event that he does so, the burden then shifts back to the state to produce other contemporaneous records of the guilty plea, including a transcript of the plea colloquy, to demonstrate that the defendant made a valid waiver of his right to trial. Carlos, 98-1366 at 6-7, 738 So.2d at 559.

We first adopted an identical rule in State v. Shelton, 621 So.2d 769 (La. 1993), for habitual offender proceedings under La.R.S. 15:529.1, to demarcate sharply the differences between direct review of a conviction resulting from a guilty plea, in which an appellate court may not presume a valid waiver of rights from a silent record, Boykin v. Alabama, 395 U.S. 238, 242, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969), and collateral attack on a final conviction used in a subsequent recidivist proceeding, as to which a presumption of regularity attaches to promote the interests of finality. We drew that distinction in Shelton because Boykin "does not prohibit a state court from presuming, at least initially, that a final judgment of conviction offered for purposes of sentence enhancement was validly obtained." Parke v. Raley, 506 U.S. 20, 30, 113 S.Ct. 517, 524, 121 L.Ed.2d 391 (1992).

In Shelton and Carlos, the defendants had been represented by counsel at the time they entered their prior guilty pleas. We therefore had no occasion to discuss how the presumption of regularity applies to a case in which the defendant entered his prior guilty plea unrepresented by counsel but after apparently executing a waiver of his right to counsel recorded in the contemporaneous documents of the guilty plea, i.e., in a case in which the face of the record does not reveal a constitutional defect. Cf. Burgett v. Texas, 389 U.S. 109, 115, 88 S.Ct. 258, 262, 19 L.Ed.2d 319 (1967) (prior felony conviction which on its face indicated that the defendant proceeded to trial unrepresented by counsel and without waiving counsel may not be used in subsequent sentence enhancement proceedings). In the present case, the form used in the Mississippi court, signed by both the trial judge and the defendant, gave advice with respect to the right to counsel, either retained or appointed, and provided the defendant with an explicit waiver of that right, attesting that he had read the statement of his rights, that he understood the advice, that he was

>   willing to proceed without counsel, and that he did so freely and voluntarily.
>
>   Our decision in Carlos entitled the state to rely on this waiver form in discharging its initial burden of proving a prior valid conviction for D.W.I. If a court may, in the context of a collateral attack on a prior conviction used in recidivist proceedings, presume from the fact of conviction alone, *i.e.,* from a silent record, that the defendant knowingly and intelligently waived his right to trial, then a court may also presume from a record which is *not* silent with respect to the waiver of counsel that the defendant made a knowing and intelligent decision to proceed without the guiding hand of an attorney and that the trial court would not have accepted the waiver if the contrary had appeared. See Parke, 506 U.S. at 30, 113 S.Ct. at 523 ("'[T]here is no principle of law better settled, than that every act of a court of competent jurisdiction shall be presumed to have been rightly done, till the contrary appears.'") (quoting Voorhees v. Jackson, 35 U.S. (10 Pet.) 449, 472, 9 L.Ed. 490 (1836)). It remains for the defendant to show otherwise if he is able to do so and for the trial court ultimately to resolve the question in light of all of the circumstances surrounding entry of the guilty plea. See, e.g., State v. Couture, 289 Mont. 215, 959 P.2d 948, 950-51 (1998) (although defendant executed affidavits that he was not advised of his right to counsel in prior D.U.I. guilty pleas, trial court did not abuse its discretion in finding on the basis of waiver forms executed contemporaneously with the pleas that the defendant was advised of his right to counsel and waived that right).

Deville, 879 So.2d at 690-91 (emphasis in original).

As noted, the records with respect to the challenged predicate convictions here certainly were not silent regarding the advisement and waiver of the right to counsel. Those records were more than sufficient under state law to demonstrate a valid waiver of the right to counsel, absent evidence from petitioner showing otherwise. Petitioner has made no such showing.

Nevertheless, in any event, federal *habeas corpus* relief may be granted only to remedy violations of the Constitution and laws of the United States; mere violations of state law will not suffice. 28 U.S.C. § 2254; Engle v. Isaac, 456 U.S. 107, 119 (1983). In this case, petitioner has

made no showing that the use of the two challenged predicate convictions for enhancement purposes in any way violated federal law. To the contrary, in light of the evidence of record that petitioner waived his right to counsel in the prior proceedings and petitioner's failure to demonstrate otherwise, the use of the predicate convictions clearly did not offend federal law. See, e.g., Cuppett v. Duckworth, 8 F.3d 1132, 1137-41 (7th Cir. 1993); see also Hernandez v. Cockrell, No. 3:00-CV-2003-M, 2001 WL 1661696, at *7 (N.D. Tex. Dec. 26, 2001).

### RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Tyrone Ingram be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this fourteenth day of May, 2007.

                                                        SALLY SHUSHAN
                                                        UNITED STATES MAGISTRATE JUDGE